UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re: Chapter 11

JOSEPH F. EWA M.D, P.C.                                   Case No. 09-49095

     Debtor.

     PLEASE TAKE NOTICE that, Guarantor Dr. Joseph Ewa, by and through his undersigned counsel, hereby applies for a stay pending appeal of the Court's November 16, 2010 Order of Sale. Guarantor respectfully requests a determination on this Application as soon as practicable so that he may pursue an appeal of the Court's November 16, 2010 Order of Sale.

     Notice of Application to Counsel. On December 7, 2010, Guarantor gave notice to Lender's counsel and counsel for the unsecured creditors by facsimile of Guarantor's intention to file this Application on December 7, 2010, between approximately 1:00 p.m. and 4:00 p.m.

     This Application is made pursuant to Fed. R. Civ. P. 62(c) and 62(e) and Fed. R. App. P. 8(a)(1) and is based upon the accompanying Affidavit of Dr. Joseph Ewa and the affirmation of Colvin Goddard Esq., the exhibits attached hereto, all the record and proceedings in this matter, the pleadings and other documents on file in this action; and such other matters that the Court may consider or of which the Court may take judicial notice.

Respectfully submitted this 7th day of December, 2010.

COLVIN GODDARD

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re: Chapter 11

JOSEPH F. EWA M.D, P.C.                                    Case No. 09-49095

    Debtor.

**GUARANTOR'S AFFIDAVIT IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL OF ORDER FOR SALE OF THE DEBTOR''S PROPERTY AT 747 FULTON STREET, BROOKLYN, NEW YORK TO JEMS LLC.**

State of New York )
                )
County of Kings   )ss:.

Dr. Joseph Ewa being duly sworn deposes and says that:

1. I am the sole shareholder and the President of the Debtor herein, JOSEPH F. EWA M.D, P.C.

2. I am also the guarantor of the Debtor's mortgage to Jems LLC

3. On or about the 7/01/2009 the Debtor filed a Chapter 13 Bankruptcy Petition in this Court Case Number. 09-45851.

4. Chapter 13 Petition was dismissed on or about 8/15/2009.

5. Debtor's counsel was recommended to me as a Chapter 11 specialist and he filed the instant matter on behalf of the Debtor.

6. As early as the Status Conference on 12/22/09, Debtor's counsel was absent from the court, when Mr. Dunstan Torres Esq., an attorney not admitted in Federal Court had to seek permission from Judge Milton to speak on Debtor's behalf.

7. The creditor, Jems LLC filed their motion to lift the automatic stay on 12/14/2009. A month later, On 1/14/2010 Debtor's counsel requested an adjournment to respond to the motion. The opposition to the motion was finally filed on 1/25/2010.

8. This Court (Judge Milton) found it necessary on more than one occasion to address the tardiness of Debtor's counsel in the prosecution of the instant matter.

9. Attorney Valerie Millman of the United States Trustee's office also remarked on more than one occasion on her inability to contact Debtor's counsel and have him address outstanding issues in the instant matter or return her telephone calls.

10. At a Conference on 1/26/2010, the matter was settled with the understanding that the Debtor would pay off the balance on the mortgage to Jems LLC by September 22, 2010.

11. I immediately negotiated a refinance loan for $460,000.00 from P&I Partners LLC. Konstantine Volakos serves as my attorney with respect to the refinance. On 04/15/2010 I paid the lender's attorney, Moulinos & Associates, $2,000.00 towards the closing costs. The interest on this loan was fixed @ 15%. Debtor's counsel was timely provided with all the information with respect to the loan. (Please see Exhibit 1)

12. Lender's counsel and Mr. Volakos complained incessantly about difficulty in contacting Debtor's counsel and having their telephone calls returned in a timely fashion.

13. This first refinance commitment was lost because Debtor's counsel failed to timely respond to inquiries from lender's counsel.

14. I was able to get the lender to recommit and a new letter was issued 9/25/2010 for a new but much more expensive loan, the interest now set at 19%. I paid lender's counsel $2,000.00 in connection with the new loan. (Please see Exhibit 2).

15. I also asked my personal attorney, Colvin Goddard Esq., to assist with the matter, and he was able to secure a letter of satisfaction from Highbridge Realty/Anthony Onua Esq., and an agreement from Christopher Sowers Esq. Negotiations were also commenced with Christopher Sowley, Arthur Sherman's counsel and Lennard Hunter's counsel with the anticipation that these remaining unsecured creditors would be paid out of the loan proceeds on the basis of negotiated settlements. (Please see Exhibits 3, 4, 5, 6, 7).

16. I am negotiating settlement agreements with respect to the tax obligations of the Debtor. (Please see Exhibit 8)

17. On the basis of the new commitment, Debtor's counsel brought on a motion on 10/27/2010 for permission to process the new loan and pay Jems LLC and the unsecured creditors.

18. A letter of intent dated September 22, 2010 was timely provided to Debtor's counsel.

19. A contract prepared on 10/28/2010 were provided to Debtor's counsel on 10/28/2010 (Please seer Exhibit 9).

20. The contract had not been provided to the court by 11/01/2010, when the Judge found that there was no contract with the new lender and that the letter of intent was not enough to stop the sale to which the parties had agreed in the Stipulation. In my opinion, if the contract had been timely filed with the Court, the hearing would have had a different result.

21. I have timely complied with every requirement of this Court as I have been ordered. I have timely paid the United States Trustee's office. I have timely paid Jems LLC pursuant to the Stipulation. I have provided monthly operating reports and financial statements.

22. I have worked arduously to procure new funding for the Debtor and all my efforts are being frustrated by the lack of action by Debtor's attorney.

23. There is no Chapter 11 plan in place, and in the absence of such a plan it is difficult to make sense of the sale to Jems LLC of the Debtor's most significant asset for $300,000.00, less than half of its value, when the new loan will provide $41,000.00 more to Jems LLC and also payments to the unsecured creditors.

24. All of the information with respect to the refinancing should have been placed before the court in a timely fashion by Debtor's counsel.

25. At a sanctions hearing on 11/16/2010, Debtor's counsel admitted having emotional problems which affected his ability to prosecute this matter in his client's interest. Debtor's counsel was able to avoid being sanctioned. However, the Court did not extend any requested relief to the Debtor in connection with the complained of conduct in spite of Debtor's request. I find that impossible to understand.

26. I am of the opinion that the Court misdirected Debtor's counsel, when it advised that it did not know if the matter could have been dismissed at this stage, ie immediately prior to the sale. I am of the opinion that the Court should have advised Debtor's counsel that it could have been dismissed by motion after a hearing and that this could have lead to a different result at the hearing on 11/16/2010.

27. For all of the foregoing reasons, I ask that the court grant the instant motion for a stay, while an appeal is made from the order of sale made and entered on November 16, 2010.

Dated: Brooklyn, New York
December 3, 2010

DR. JOSEPH EWA

Sworn to before me
this 3rd day of December 2010

NOTARY PUBLIC
Qualified in QUEENS County
Reg. No. 02GO6057908 · Commission
Expires 4/30/2011

In re: Chapter 11
JOSEPH F. EWA M.D, P.C.

Case No. 09-49095

Debtor.

**AFFIRMATION OF GUARANTOR'S COUNSEL IN SUPPORT OF MOTION FOR A STAY PENDING APPEAL OF ORDER FOR SALE OF THE DEBTOR"S PROPERTY AT 747 FULTON STREET, BROOKLYN, NEW YORK TO JEMS LLC.**

This matter comes before the Court on the motion (the "Motion") of Joseph F. Ewa ("the Guarantor") to stay this Chapter 11 Bankruptcy proceeding, to permit the Debtor to appeal the Order of sale made and entered herein on November 16, 2010. For the following reasons, the Motion must be granted.

Jurisdiction
This Court has jurisdiction over this core proceeding under 28 U.S.C. §§ 1334(b) and 28 U.S.C. § 158(a)(1) or (a)(2) and Rule 8002., and the Eastern District of New York standing order of reference dated August 28, 1986.

Background
The following relevant facts are not in dispute. The Debtor, a New York Corporation, commenced this chapter 11 case on July 28, 2009. The Debtor's assets consist primarily of one hundred percent (100%) ownership interests in a commercial condominium, known as Sopo Commercial Condo #2 or 747 Fulton Street. The Lender holds a mortgage and security interest on this real property, securing a debt of Three Hundred Thousand ($300,000.00) Dollars. Dr. Joseph Ewa has personally guaranteed the Debt. Other creditors of the Debtor include Highbridge Realty $65,000.00, Lennard Hunter $45,000.00, Christopher Sowers Esq., $22,000.00, Arthur Sherman $74,000.00 and Christopher Sowley PhD, $16,541.68. Debtor owes $16,240.30 to various taxing authorities. Prior to the filing of this chapter 11 case, the Lender commenced an action in state court to foreclose its mortgage on Debtor's real property and to recover on the guarantees. The parties concluded a Stipulation of Settlement, but immediately thereafter and before its implementation, Debtor sought reorganization under chapter

11 of the bankruptcy code. On 03/10/2010 this court so ordered a Stipulation of settlement, the main features of which are: (a) Debtor was said to have owed Lender Four Hundred and Thirty Six Thousand, Seven Hundred and Fifty ($436,750.00) Dollars with a daily interest amount of Two Hundred ($200.00) Dollars. (b) If Debtor did not pay the "Payoff Amount" on or before September 22, 2010 the Premises shall be sold in the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code. (c) the Lender's right to credit bid was alleged to be protected. On March 10, 2010, the Court issued a decision and an order approving the Stipulation, from which no appeal was taken. The Stipulation makes no provision, if the Debtor obtains and delivers the payoff amount to the Lender by September 22, 2010 other than that its obligation to the Lender will be satisfied. There is no reason to believe Debtor's bankruptcy case will be dismissed although it seems to be the case that no auction sale under Section 363 would take place. Upon information and belief, on or about April 15, 2010, Debtor obtained and communicated to Lender through Debtor's counsel, a Letter of intent from a new Lender willing to issue a letter of Intent which would allow the Debtor to refinance in the amount of $460,000.00. When contacted about the letter of intent and requested to discount the debt, Lender refused to enter into any negotiation and the talks with the new Lender were stymied. Debtor revived the negotiations and obtained a new letter of intent dated 9/22/2010. The Court had not declared a Default on 09/22/2010. On the adjourned date, the Court expressed its unease with the fact that Lender's Counsel drafted the Stipulation of settlement, with the $436,750.00 stated therein as indebtedness, with the fact that debtor accepted the number without objection. The Court urged the parties to work out a resolution. The Lender opposed to any workout. A sale of Debtor's real property was noticed for 11/16/2010 and over the objection of the guarantor, the Property was ordered sold to Lender for $300,000.00.

DISCUSSION

THE LENDER IS ESTOPPED BY ITS OWN CONDUCT

The Lender is estopped from seeking to enforce the Order of sale made on November 16, 2010 because said Lender caused the Debtor and the Guarantor to rely on the Stipulation of March 10, 2010 to their detriment.

The Doctrine of promissory estoppel prevents a promisor from denying the existence of a promise when the promisee reasonably and foreseeably relies on the promise and to his or her loss acts or fails to act and suffers an injustice that can only be avoided by enforcement of the promise.

The promise made in the Stipulation for the benefit of the Debtor and the Guarantor was that the Debtor would be able to repay the loan to Jems LLC by 9/22/2010. Since the promise was made in the context of a bankruptcy proceeding, there is an implied promise that the Lender will not act to frustrate the efforts of the Debtor's to secure refinancing of the Loan. A necessary part of that process being the application to the Court for the Debtor to refinance.

Debtor and Guarantor have relied upon the payoff provision in the Stipulation to their detriment because the Lender failed to act to support their effort to refinance or in the alternative acted to prevent success in their effort to refinance.

Your affiant contacted Lender's counsel by telephone in July 2010, seeking to negotiate a settlement of Debtor's obligations to Lender and other creditors. Mr. Mark Frankel Esq., refused to enter into any discussion of the settlement.

Upon information and belief, Mr. Frankel's posture had not changed since being made aware on or about April 15, 2010, that Debtor had received a letter of intent with regard to new financing available to Debtor.

It is conceded that Debtor's counsel should not have waited until October 2010 to apply to this court for permission to refinance. This however does not change the fact that Debtor and Guarantor was ignorant of Lender's true motives until October 2010 and throughout all that time relied upon Lender's promise that Debtor would be able to pay off the dent until Lender formally opposed said application to refinance which was denied.


A STAY MAY BE GRANTED HEREIN BECAUSE DEBTOR WILL SUFFER IRREPARABLE HARM IF ITS REAL PROPERTY IS SOLD FOR $300,000.00 WHICH IS LESS THAN HALF OF ITS CURRENT MARKET VALUE.

It is undeniable that the Debtor's real property is located in a highly desirable Brooklyn neighborhood which is undergoing gentrification. The price in the order of Sale is less than half of what the proposed new Lender appraises as the current market value. If this sale is enforced, Debtor will not have any recourse to the equity which will then accrue to the benefit of Jems LLC.

THE COURT CAN REVIEW AND SET ASIDE THE STIPULATION OF MARCH 2010.

A bankruptcy court may approve a compromise and settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 if it "is fair, reasonable and adequately based on the facts and circumstances before the court." In re Hibbard Brown & Co., 217 B.R. 41, 45 (Bankr. S.D.N.Y.1998). "As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged," In re Adelphia Commc'ns Corp., 368 B.R. 140, 226 (Bankr. S.D.N.Y. 2007), "because they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate," Inv. Exch. Group, LLC v. Colo. Capital Bank (In re 1031 Tax Group, LLC), Case No. 07-11448, Adv. Pro. No. 07-1710, 2007 WL 2455176, at *3 (Bankr. S.D.N.Y. August 23, 2007).

In determining whether a proposed settlement should be approved, a court must determine whether the settlement is in the best interests of the estate and whether it is "fair and equitable." Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968). The court's responsibility is to "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (alteration in original) (quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)). The Second Circuit summarized the factors that a court must consider when deciding whether a settlement falls above or below the lowest point in the range of reasonableness as follows:

(1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;(3) "the paramount interests of the creditors," including each affected

class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";(4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and"[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining." Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007) (alteration in original) (quoting In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

Before applying the Rule 9019 standard, this Court must address a threshold issue: whether this Court has the ability to approve this settlement at all even if the Iridium factors weigh in favor of approval. While it is true that settlements are encouraged, Adelphia, 368 B.R. at 226, it is also true that parties cannot enter into a settlement that violates law or public policy, Se. Fed. Power Customers, Inc. v. Geren, 514 F.3d 1316, 1321 (D.C. Cir. 2008); Miller Tabak Hirsch & Co. v. Comm'r, 101 F.3d 7, 10 (2d Cir. 1996). It is well established that "[s]ettlements are void against public policy . . . if they directly contravene a state or federal statute or policy." In re Smith, 926 F.2d 1027, 1029 (11th Cir. 1991); see also Allied Erecting & Dismantling, Co. v. USX Corp., 249 F.3d 191, 196 (3d Cir. 2001); EEOC v. Astra USA, Inc., 94 F.3d 738, 744 (1st Cir. 1996).

The Stipulation must be vacated because the default provisions conflict with the Bankruptcy Code. First, the settlement provides that, upon Debtor's default, the Premises shall be sold in the Bankruptcy Court pursuant to section 363 of the Bankruptcy Code. Procedurally, this violates Bankruptcy Code § 1104(a), which requires the bankruptcy court to appoint a chapter 11 trustee "after notice and a hearing." Other parties in interest would have the right to object, and in the event that grounds for the appointment of a trustee are not found to exist, a trustee could not be appointed. Moreover, this provision substantively violates § 1106, which sets forth the duties of a chapter 11 trustee. 11 U.S.C. § 1106. This Court must vacate a stipulation between the parties that flies in the face of the Bankruptcy Code by limiting a chapter 11 trustee's duties and obligations. As explained by the

Supreme Court:

The powers and duties of a bankruptcy trustee are extensive. Upon the commencement of a case in bankruptcy, all corporate property passes to an estate represented by the trustee. 11 U.S.C. §§ 323, 541. The trustee is "accountable for all property received," §§ 704(2), 1106(a)(1), and has the duty to maximize the value of the estate, see § 704(1); In re Washington Group, Inc., 476 F.Supp. 246, 250 (M.D.N.C. 1979), aff'd sub nom. Johnston v. Gilbert, 636 F.2d 1213 (4th Cir. 1980), cert. denied, 452 U.S. 940, 101 S.Ct. 3084, 69 L. Ed.2d 954 (1981). He is directed to investigate the debtor's financial affairs, §§ 704(4), 1106(a)(3), and is empowered to sue officers, directors, and other insiders to recover, on behalf of the estate, fraudulent or preferential transfers of the debtor's property, §§ 547(b)(4)(B), 548. Subject to court approval, he may use, sell, or lease property of the estate. § 363(b). Moreover, in reorganization, the trustee has the power to "operate the debtor's business" unless the court orders otherwise. § 1108. Even in liquidation, the court "may authorize the trustee to operate the business" for a limited period of time. § 721. In the course of operating the debtor's business, the trustee "may enter into transactions, including the sale or lease of property of the estate" without court approval. § 363(c)(1). As even this brief and incomplete list should indicate, the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor. Commodity Futures Trading Com'n v. Weintraub, 471 U.S. 343, 353 (1985). A chapter 11 trustee owes a fiduciary duty to the bankruptcy estate, id. at 355, and cannot be bound by an agreement between the debtor and a creditor that conflicts with the trustee's obligations under the Bankruptcy Code. It is possible that the chapter 11 trustee would determine that the sale of the Debtor's asset is not in the estate's best interests, and that, instead the Debtor's guarantor should be permitted to refinance the existing mortgage. The Stipulation requiring the sale of Debtor's asset, places the chapter 11 trustee in the impossible position of deciding between violating a court order, i.e. the court-approved Stipulation, or violating his fiduciary duties. The Lender proposes that there will be a deficiency even after the sale of the asset. This prevents the Debtor from acting to prevent its guarantor's being subjected to Court action on account of such deficiency and from providing relief to the creditors other than the lender.

The Stipulation must be vacated because of the provisions that violate the Bankruptcy Code. The provisions cannot simply be ignored as immaterial because they establish the form of relief available to the Lender in the event the Debtor defaults under the Stipulation.

This Court cannot strike the offensive provisions and approve the remainder of the Stipulation. It is well established that a court "should approve or disapprove a proposed agreement as it is placed before [it] and should not take it upon [itself] to modify [the agreement's] terms." Becker v. Warner Commc'ns, Inc. (In re Warner Commc'ns, Inc.), 798 F.2d 35, 37 (2d Cir. 1986) (class action settlement); see also Reynolds v. Roberts, 202 F.3d 1303, 1312 (11th Cir. 2000).

For all of the foregoing reasons this Court must grant a stay of its order of sale made on 11/16/2010 pending appeal.

Dated: Far Rockaway, New york
       December 7, 2010

COLVIN GODDARD



The Law Firm of
**MOULINOS & ASSOCIATES**
Limited Liability Company

150 East 58th Street, 23th Floor, New York, New York 10022
Tel 212.852.5981 • Fax 212.852.5982
www.moulinos.com

April 15, 2010

## LETTER OF INTENT

Dr. Joseph Ewa
c/o Konstantine Volakos, Esq.

Re: 745 Fulton Street, Brooklyn, New York

Dear Mr. Volakos:

As discussed earlier today, we wish to indicate on behalf of our client, P&I Partners LLC, its interest in providing a private loan to your client, Dr. Joseph Ewa, in regard to the refinancing of the outstanding loans which affect the above referenced property. The proposed terms of refinancing are as follows:

| | |
|---|---|
| Principal Amount of Loan: | $460,000.00 |
| Interest Rate: | 15% |
| Default Interest Rate: | 21% |
| Amortization: | 10 years |
| Prepayment Penalty: | 5% of principal balance |

Any loan would be subject to a verification of rents paid by the current tenant as well as an appraisal and the satisfaction of all outstanding loans at the time of refinancing. As a further condition to providing this loan, our client will also require the following:

    i.    execution of a first mortgage over the property in favor of P&I Partners LLC;

    ii.    execution of an assignment of rents and leases to P&I Partners LLC;

    iii.    approval of the bankruptcy court authorizing this loan and acknowledging our client's interest in the property as a first lien;

    iv.    a valid title and mortgage policy recognizing our client's right as a first lien holder over the property;

    v.    extinguishment of all other liens over the property held by other creditors and the payment of all rents held in escrow to Dr. Ewa;

    vi.    dismissal of the bankruptcy proceeding;

April 15, 2010
Page -2-

Dr. Joseph Ewa
c/o Konstantine Volakos, Esq.

Re: 745 Fulton Street, Brooklyn, New York

      vii.    payment by Dr. Ewa of all closing costs, mortgage tax and other charges applicable to this transaction, including a fee of $3,000.00 to this office as counsel for P&I Partners LLC.

Please note that these terms as presented on behalf of our client and are non-binding to P&I Partners LLC which may withdraw these terms at anytime. Additionally, the presentation of these terms should not be construed as a firm commitment to provide Dr. Ewa with any loan and is solely intended to confirm his request for financing.

If the foregoing terms are acceptable to your client, please have him countersign this letter in the space provide it below and return it to our office along with a check for $2,000.00 representing an application and document review fee. We note that this fee is non-refundable however will be applied towards Dr. Ewa's closing costs upon closing of this transaction.

I look forward to hearing from you.

Yours faithfully,

Peter Moulinos

READ, AGREED AND ACCEPTED:

_____

DR. JOSEPH EWA



The Law Firm of

**MOULINOS**
**& ASSOCIATES**
Limited Liability Company

150 East 58th Street, 25th Floor, New York, New York 10022
Tel 212.832.5981 • Fax 212.832.5982
www.moulinos.com

September 22, 2010

## LETTER OF INTENT

Dr. Joseph Ewa
c/o Konstantine Volakos, Esq.

Re: 745 Fulton Street, Brooklyn, New York

Dear Mr. Volakos:

As discussed earlier today, we wish to indicate on behalf of our client, P&I Partners LLC, its interest in providing a private loan to your client, Dr. Joseph Ewa, in regard to the refinancing of the outstanding loans which affect the above referenced property. The proposed terms of refinancing are as follows:

| | |
|---|---|
| Principal Amount of Loan: | $460,000.00 |
| Interest Rate: | 19% |
| Default Interest Rate: | 21% |
| Amortization: | 3 years |
| Prepayment Penalty: | 5% of principal balance |

Any loan would be subject to a verification of rents paid by the current tenant as well as an appraisal and the satisfaction of all outstanding loans at the time of refinancing. As a further condition to providing this loan, our client will also require the following:

      i.     execution of a first mortgage over the property in favor of P&I Partners LLC;

      ii.    execution of an assignment of rents and leases to P&I Partners LLC;

      iii.   approval of the bankruptcy court authorizing this loan and acknowledging our client's interest in the property as a first lien;

      iv.   a valid title and mortgage policy recognizing our client's right as a first lien holder over the property;

      v.    extinguishment of all other liens over the property held by other creditors and the payment of all rents held in escrow to Dr. Ewa;

      vi.   dismissal of the bankruptcy proceeding;

September 22, 2010
Page -2-

Dr. Joseph Ewa
c/o Konstantine Volakos, Esq.

Re: 745 Fulton Street, Brooklyn, New York

vii.    payment by Dr. Ewa of all closing costs, mortgage tax and other charges applicable to this transaction, including a fee of $3,000.00 to this office as counsel for P&I Partners LLC.

Please note that these terms as presented on behalf of our client and are non-binding to P&I Partners LLC which may withdraw these terms at anytime. Additionally, the presentation of these terms should not be construed as a firm commitment to provide Dr. Ewa with any loan and is solely intended to confirm his request for financing.

If the foregoing terms are acceptable to your client, please have him countersign this letter in the space provide it below and return it to our office along with a check for $2,000.00 representing an application and document review fee. We note that this fee is non-refundable however will be applied towards Dr. Ewa's closing costs upon closing of this transaction.

I look forward to hearing from you.

Yours faithfully,

Peter Moulinos

READ, AGREED AND ACCEPTED:

_____

DR. JOSEPH EWA